# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| CYNTHIA SHEEHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:12 CV 477 |
| | ) | |
| BRADY'S THIS IS IT, RON COHEN, | ) | |
| DAVID COHEN, NATALIE COHEN, | ) | |
| BLANCA MENCHACA, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

Defendants Brady's This Is It, Ron Cohen, Natalie Cohen, David Cohen, and

Blanca Menchaca ("defendants") have moved to dismiss plaintiff Cynthia Sheehy's

complaint. (DE # 6.) Plaintiff has not filed a response, and the time to do so has now

passed. For the following reasons, defendants' motion is granted in part and denied in

part.

## I.    Facts and Procedural History

Plaintiff was hired at defendant Brady's This is It ("the store"), a retail clothing

store, in 2001 as a cashier/clerk. (DE # 1 at 2.) For the first several years of her

employment, plaintiff did not have any serious problems at her job. (*Id.*) However,

plaintiff eventually began to experience problems with the store's owners.[1] The store's

---

[1] In her complaint, plaintiff refers to the store as having multiple owners, but the court can only discern one owner from plaintiff's allegations: Ron Cohen. (*See* DE # 1 at 2.) Because plaintiff has alleged that the "owners" of the store have discriminated against her, however, the court will use that term in this opinion. (*Id.*)

owners would discuss performance problems with black employees in a demeaning manner in the public areas of the store, but would call Hispanic or white employees to more private areas to discuss those same problems. Plaintiff has also alleged that black employees were not considered for management positions, despite being qualified and experienced. (*Id.* at 9.)

Plaintiff began to have additional problems when a Hispanic woman, defendant Blanca Menchaca, was hired as the store's general manager. (*Id.* at 2.) For example, the store's owner, defendant Ron Cohen, instructed Menchaca to give plaintiff additional hours, but Menchaca only gave plaintiff four additional hours a week, despite the fact that new employees were being given over thirty hours a week. (*Id.*) Plaintiff also asked defendant David Cohen and defendant Menchaca to work Sundays, but neither scheduled plaintiff to work Sundays. (*Id.* at 3.) Plaintiff took her issues to her union representative, who called a store meeting. (*Id.*) At the meeting, defendant Menchaca told the union rep that plaintiff was not scheduled on Sundays because of plaintiff's availability. (*Id.*) As a result of the meeting, the union representative filed several grievances on plaintiff's behalf. (*Id.*) Those grievances, which plaintiff attached to her complaint (DE # 1-1 at 1-4), and which requested payment for dates plaintiff was not scheduled, have not been paid. (DE # 1 at 3.)

On February 2, 2012, plaintiff filed a charge of discrimination with the Gary Department of Human Relations ("GDHR").[2] (*Id.*) After filing the charge, a representative from the GDHR held a meeting with plaintiff, defendant Menchaca, and defendant David Cohen. (*Id.*) Despite previously contending that plaintiff was not being scheduled on Sundays due to plaintiff's availability, defendants told the GDHR representative that plaintiff was not being scheduled on Sundays because plaintiff could not go up and down the stairs in the store.[3] (*Id.*)

After plaintiff filed her charge with the GDHR, she began to receive written reprimands for certain conduct which other employees also engaged in, but were not similarly reprimanded. (*Id.* at 10.) Plaintiff was also forced to call off work, missing out on a day's pay, for arriving late to work, despite the fact that other employees who similarly arrived late were not forced to miss work. (*Id.* at 6.) Additionally, despite eventually being given some hours on Sundays, plaintiff had her Sunday hours reduced after defendant Menchaca found out that plaintiff was working those days. (*Id.*)

---

[2] The basis of plaintiff's charge of discrimination with the Gary Department of Human Relations is not clear, as neither party has submitted that document to the court. The charge was later forwarded to the EEOC, which issued a right-to-sue letter. (DE # 1 at 4; DE # at 1 at 11.) From what the court can tell from the right to sure letter (DE # 1 at 11), the basis of plaintiff's charge appears to have been Title VII of the Civil Rights Act of 1964 or the Americans with Disabilities Act. Plaintiff has also alleged that she had the Gary Department of Human Relations amend her charge to include retaliation after she was terminated. (DE # 1 at 4.)

[3] Plaintiff injured her knee and back while at work in 2008. (DE # 1 at 3.) Plaintiff's knee buckles and gives out unexpectedly, and plaintiff's doctor has instructed her not to go up and down stairs. (*Id.*)

On June 20, 2012, plaintiff posted a bible verse on the employee bulletin board. (DE # 1 at 3.) The bulletin board was used for various things, including requests for time off and noting merchandise outages. (*Id.*) Two days later, on June 22, 2012, plaintiff began to feel ill while at work. (*Id.*) Plaintiff informed the assistant manager that she wanted to leave early. The assistant manager spoke with the owner, and plaintiff was then called into a meeting with defendants Ron Cohen, David Cohen, Blanca Menchaca, and another employee who is not a defendant in this case. (*Id.* at 3-4.) Ron Cohen asked plaintiff if she had posted the bible verse, and plaintiff responded that she had. (*Id.* at 4.) Ron Cohen then told plaintiff that the bible verse was disrespectful and a threat to the company. (*Id.*) He then informed plaintiff that she was fired. (*Id.*)

At that point, plaintiff picked up the bible verse, which had been set on the counter, and proceeded to the break room to gather her belongings. (*Id.*) Defendant David Cohen approached plaintiff in the break room, and asked for the bible verse back. (*Id.*) Plaintiff denied his request, and Cohen told her that she wasn't leaving with the paper. (*Id.*) When plaintiff got to the front of the store, plaintiff discovered that David Cohen had locked the door, preventing plaintiff from leaving the store. (*Id.*) David Cohen and Ron Cohen then stood in front of the door, blocking plaintiff's exit, despite plaintiff's repeated requests to allow her to leave. (*Id.*) At that point, defendant Natalie Cohen approached plaintiff from behind, grabbed plaintiff's wrist and ripped a plastic bag attached to plaintiff's wrist off of plaintiff's arm, causing plaintiff significant injury. (*Id.*)

Plaintiff was then allowed to leave the store. (*Id.*) After leaving, plaintiff went to the police station to file a police report. (*Id.*) Plaintiff also had to see a doctor the next day due to the injuries suffered from having the plastic bag ripped from her arm. (*Id.*) After the EEOC issued plaintiff a right-to-sue letter, plaintiff filed the current suit, alleging claims of racial and religious discrimination under Title VII, retaliation under Title VII,[4] violations of the Americans with Disabilities Act ("ADA"), and state-law claims of assault, criminal confinement, and wrongful discharge.[5]

## II.  Legal Standard

Defendants have moved to dismiss plaintiff's claims under RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE for failure to state a claim upon which relief may be granted. A judge reviewing a complaint under a RULE 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-movant's favor. *Erickson v. Pardus* , 551 U.S. 89, 93

---

[4] Defendants argue in their brief in support of their motion to dismiss that it is not clear from plaintiff's complaint if her retaliation claim is brought under Title VII or state law. (DE # 7 at 8.) Despite arguing that plaintiff failed to file an administrative charge for several of her claims (*see* DE # 7 at 7-8), defendants have not argued that plaintiff failed to file a charge of discrimination regarding her Title VII race-based claim. Because defendants appear to concede that plaintiff's charge of discrimination contained a Title VII race-based discrimination charge, and because plaintiff has alleged that she began being harassed after filing her charge of discrimination, the court will assume that plaintiff's retaliation claim is brought pursuant to Title VII.

[5] Although plaintiff does not specifically list each of these legal theories in her complaint, she was not required to plead specific legal theories. *Hatmaker v. Mem'l Med. Cent.*, 619 F.3d 741, 743 (7th Cir. 2010). Defendants have proceeded under the assumption that plaintiff is alleging these claims, and the court will therefore analyze their motion following that assumption.

(2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the FEDERAL RULES OF CIVIL PROCEDURE, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy RULE 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

However, the plaintiff does not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so

long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even

if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the

court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded

are taken as true, a plaintiff has "nudged their claims across the line from conceivable to

plausible." *Twombly*, 550 U.S. at 555, 570.

## III. Analysis

Defendants have moved to dismiss all of plaintiff's claims, and their brief in

support of their motion to dismiss contains eleven separate sections of argument.

(DE # 7.) The court will address each argument defendants have made in turn. In doing

this, the court will address defendants' arguments section by section, despite the fact

that the arguments in each section often do not correspond with the section title.

### A. Failure to Meet Pleading Standards (Sections A & B of Defendants' Brief)

Defendants' first argument is that plaintiff's complaint contains several legal

conclusions which the court must disregard. First, defendants argue that plaintiff's

statements that she is "entitled to relief because [her] civil rights were totally violated"

(DE # 1 at 7) and that she was "terminated unjustly (which was also determined by the

unemployment office)" (DE # 1 at 7) cannot be considered because they are legal

conclusions. (DE # 7 at 5.) In reviewing a complaint on a 12(b)(6) motion, the court

accepts "the well-pleaded facts in the complaint as true, but legal conclusions and

conclusory allegations merely reciting the elements of the claim are not entitled to this

presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The

court agrees that the portions of plaintiff's complaint quoted above are legal conclusions that need not be considered in reviewing the sufficiency of plaintiff's complaint, and the court will accordingly disregard them.

Defendants also argue that plaintiff's wrongful discharge claim should be dismissed because it is included in the "Statement of Legal Claim" section of her complaint but not the "Basis of Claim and Jurisdiction" section of her complaint. (DE # 7 at 5.) Defendants have presented no case law in support of their argument that this omission is fatal to plaintiff's wrongful discharge claim, and because the court must construe plaintiff's pro se complaint liberally, the court does not find this argument to be persuasive. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Defendants next argue that plaintiff has failed to plead sufficient factual matter regarding several of her claims. (DE # 7 at 6-7.)[6] The court will address these arguments as they relate to plaintiff's specific claims.

### I. ADA Claim

First, defendants argue plaintiff's ADA claim should be dismissed because it "has already been demonstrated that Plaintiff never filed an administrative charge or disability claim with the EEOC or the Gary HRC." (DE # 7 at 7.) "Before litigating an

---

[6] Defendants also argue that plaintiff's complaint should be dismissed because she has not identified the elements of her claims. (DE # 7 at 6.) Defendants cite no authority for the proposition that a plaintiff's failure to list the elements of her claims requires dismissal of those claims, and "[i[t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986).

unlawful employment practice under the ADA, an employee must file a timely charge of discrimination with the EEOC." *Smith v. Union Pacific R. Co.*, 474 F. App'x 478, 480 (7th Cir. 2012); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Plaintiff has attached the right-to-sue letter she received from the EEOC to her complaint. (DE # 1 at 11), but did not attach a copy of her charge of discrimination. The failure to file a charge with the EEOC is an affirmative defense, however, *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007), which defendants have the burden of proving. *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). Because neither plaintiff nor defendants attached plaintiff's charge of discrimination, the court cannot conclude that plaintiff failed to file a charge regarding her ADA claim. And although a plaintiff can "effectively plead[] herself out of court by alleging facts that are sufficient to establish" an affirmative defense, *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006), the court cannot determine from plaintiff's complaint that she did not file a charge of discrimination with regard to her ADA claim. Therefore, defendants' argument on this issue fails.

Defendants also argue that plaintiff has failed to allege that she is a member of a protected class under the ADA. (DE # 7 at 7.) "To prevail on an ADA claim, a plaintiff must show that (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse job action against her because of her disability or without making a reasonable accommodation for it." *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037

(7th Cir. 2013). The court will assume that defendants' argument here is that plaintiff has failed to allege that she is disabled. Plaintiff has alleged, however, that in 2008 she suffered an injury which causes her knee to buckle and give at unexpected times. (DE # 1 at 3.) It is possible that this constitutes a disability, but defendants have not made any argument regarding this allegation, and the court will not make defendants' arguments for them. *Sanchez*, 792 F.2d at 703. Therefore, defendants' argument here fails.

Defendants make no other arguments regarding plaintiff's ADA claim, and that claim will not be dismissed pursuant to defendants' motion.

## II. Title VII - Race Discrimination

Defendants argue that plaintiff's Title VII race discrimination claim must be dismissed because plaintiff has failed to allege that she suffered an adverse employment action. (*See* DE # 7 at 7.) The Seventh Circuit has stated that plaintiffs alleging employment discrimination under Title VII "may allege these claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "A complaint need not 'allege all, or *any,* of the facts logically entailed by the claim,' and it certainly need not include evidence." *Id.* (quoting *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998) (emphasis in original)). "[I]n order to prevent dismissal under Rule 12(b)(6), a complaint alleging [racial] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [race]." *See Tamayo*, 526 F.3d at 1084; *see also Huri v. Circuit Court of Cook County*, No. 11 C 3675, 2012 WL 1431268, at

*3 (N.D. Ill. Apr. 25, 2012) ("For a Title VII discrimination claim, a plaintiff must allege facts that plausibly suggest that the defendant employer 'instituted an adverse employment action against [the plaintiff] on the basis of her' protected characteristic." (quoting *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011))).

In her complaint, plaintiff alleges that the store's owners always treated black employees differently,[7] and specifically, black employees were not considered for management positions even though the black employees were qualified for these positions. (DE # 1 at 9.) But plaintiff does not allege anywhere in her complaint that she applied or was even interested in applying for these positions. (*See id.* at 9, 10.) Thus, plaintiff has not alleged an adverse employment action with regard to failure to post managerial job openings.

Plaintiff, however, has also alleged other acts of racial discrimination, including that the store's owners would speak to black employees in a demeaning manner in the store's public areas, but would not do the same for white or Hispanic employees. (*Id.* at 2.) Defendants have not addressed this allegation. Additionally, because plaintiff may be proceeding under a hostile work environment theory, plaintiff's allegations

---

[7] Defendants argue that plaintiff's race-based discrimination claim fails because plaintiff alleges that black employees were treated differently, which defendants contend could mean that the black employees were treated more favorably than other employees. (DE # 7 at 7.) In ruling on defendants' motion to dismiss, the court must construe all reasonable inferences in plaintiff's favor, *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013), and it is reasonable to infer that differently means worse in this context.

regarding the failure to post managerial job openings may also be relevant. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) ("Because a 'hostile work environment' is a single unlawful practice under Title VII, a discrimination charge based on a hostile work environment encompasses all the events during that hostile environment so long as the charge is filed within the charging period . . . ."); *Williams v. Forest Pres. Dist. of Cook Cnty.*, No. 09 CV 7810, 2010 WL 3909475, at *2 (N.D. Ill. Oct. 1, 2010) ("Subjecting an employee to a hostile work environment is a form of an adverse employment action."). Defendants have not addressed these issues, and their argument therefore fails.

Defendants also argue that plaintiff's race-based discrimination claim fails because she has failed to allege that she was damaged by the alleged discrimination. (DE # 7 at 7.) Plaintiff has alleged that her employment caused her to suffer severe emotional distress, even before she was terminated. (DE # 1 at 8.) Defendants have not addressed this allegation, and their argument on this issue therefore fails.

Finally, defendants argue that plaintiff's race-based employment discrimination claim must be dismissed because plaintiff fails to allege that she is black, African-American, or otherwise a member of a protected class. (DE # 7 at 7.) In her complaint, plaintiff refers to herself as a person "of color" (DE # 1 at 2), and because plaintiff is proceeding pro se, the court must construe her complaint liberally. Therefore, this is sufficient to allege that plaintiff is a member of a protected class.

### III. Title VII - Religious Discrimination

It also appears that plaintiff is alleging a claim for religious discrimination or retaliation based on religion. (DE # 1 at 3-4, 7, 10.) The only argument defendants make regarding plaintiff's religious discrimination/retaliation claim is that plaintiff never filed an administrative charge for a religious discrimination claim. (DE # 7 at 8.). But, as discussed above, defendants have not provided the court with a copy of plaintiff's charge of discrimination, and the allegations in plaintiff's complaint do not establish that plaintiff failed to file a charge of discrimination with regard to her religious discrimination claim. Therefore, defendants' motion to dismiss cannot be granted on this ground.

### B. Jurisdiction (Section C of Defendants' Brief)

Defendants first argue that plaintiff has failed to provide the court with a sufficient jurisdictional basis for her state-law claims. (DE # 7 at 8.) The court has original jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331. (*See* DE # 1 at 7.) Plaintiff's remaining claims for wrongful discharge, assault, and criminal confinement are state-law claims. "A court may assume jurisdiction where a *pro se* plaintiff has failed to include a jurisdictional statement if it is otherwise clear from the context the source from which jurisdiction arises." *Maynard v. Abbott Laboratories*, No. 12–C–0939, 2013 WL 695817, at *3 (E.D. Wis. Feb. 26, 2013) (citing *Smoot v. Mazda Motors of Amer., Inc.*, 469 F.3d 675, 677 (7th Cir. 2006)).

Under 28 U.S.C. § 1367(a), when a district court has original jurisdiction over a civil action, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). A district court "has supplemental jurisdiction over [state-law claims] pursuant to 28 U.S.C. § 1367(a) so long as they 'derive from a common nucleus of operative fact' with the original federal claims." *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999)); *see also Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins*, 549 F.3d at 495.

In this case, plaintiff has alleged that she was discriminated against on the basis of her religion. (*See* DE # 1 at 3-4, 7, 10.) The facts alleged in support of this claim involve plaintiff's termination and the events leading up to plaintiff's termination. (*Id.* at 3-4.) Plaintiff's state-law claims all revolve around her termination, and derive from a common nucleus of operative fact with plaintiff's religious discrimination claim. *Ho-Chunk Nation*, 512 F.3d at 936. Therefore, the court has supplemental jurisdiction over these claims.

Next, defendant argues that plaintiff's claims of religious discrimination, assault, false imprisonment, and retaliation should be dismissed because plaintiff failed to file an administrative charge for those claims. (DE # 7 at 8.) As discussed above, defendants have not provided the court with a copy of plaintiff's charge of discrimination, and the

14

court cannot determine from plaintiff's complaint that she failed to file a charge of discrimination for any of these claims. Moreover, defendants have failed to cite any authority for the proposition that plaintiff was required to file an administrative charge for her state-law claims. Defendants' argument on this issue therefore fails.

Defendants also argue that plaintiff's claims of retaliation, criminal confinement, and assault must be dismissed because they are too vague. (DE # 7 at 8.) The court will address each claim in turn.

## I. Title VII Retaliation

Defendants argue that "there is no way to respond to [plaintiff's retaliation] . . . due to its vagueness on the face of the complaint." (*Id.*) To prove a Title VII retaliation claim under the direct method, a plaintiff must show "(1) that she engaged in protected conduct, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the two." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). Plaintiff has alleged that she filed a charge of discrimination with the Gary Department of Human Relations, and that after filing the charge she began to receive written reprimands that other employees who engaged in the same behavior did not receive. (DE # 1 at 10) Additionally, plaintiff has alleged that this treatment caused her to lose out on pay and have her hours reduced. (DE # 1 at 6.) Defendants do not address any of these allegations. In any event, however, these allegations are sufficient to state a claim for retaliation under Title VII.

## II. Criminal Confinement

Next, defendants argue that plaintiff's criminal confinement claim is too vague. (DE # 7 at 8.) To prove criminal confinement under Indiana law in a criminal case, the state must prove that a defendant knowingly or intentionally confined another person without that person's consent. IND. CODE § 35–42–3–3; *see also Frazier v. State*, No. 49A05–1210–CR–526, 2013 WL 2474506, at *5 (Ind. Ct. App. June 10, 2013). In Indiana, a plaintiff may bring a civil action for a violation of IND. CODE § 35–42–3–3, the criminal confinement statute, if that person has suffered a pecuniary loss as a result of the violation of that statute. IND. CODE § 34-24-3-1; *see also Fioretti v. Aztar Indiana Gaming Co., LLC,* 790 N.E.2d 587, 588 (Ind. Ct. App. 2003).

To recover under IND. CODE § 34-24-3-1, the Indiana Crime Victim's Relief Act, a plaintiff need not prove that a defendant was actually convicted of a crime. *Quicken Loans, Inc. v. Downing*, No. 1:10–cv–1565, 2012 WL 4762411, at *4 (S.D. Ind. Oct. 5, 2012). Instead, a plaintiff must prove that the defendant committed the alleged crime by a preponderance of the evidence. *Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999). Despite defendants' argument that plaintiff's criminal confinement claim is too vague, plaintiff has alleged that after she was terminated, several defendants blocked the door and prevented her from leaving the store, despite plaintiff's requests to be allowed to leave. (DE # 1 at 4.) This is sufficient to state a claim for criminal confinement under the Indiana Crime Victim's Relief Act.

### III. Assault

Finally, defendants argue that plaintiff's assault claim is too vague. In Indiana, an "[a]ssault is effectuated when one acts intending to cause an imminent apprehension of a harmful or offensive contact with another person." *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008). "It is the right to be free from the apprehension of a battery which is protected by the tort . . . [of] assault." *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991); *see also Knight v. Indiana Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) ("An assault creates an apprehension of imminent harmful or offensive contact, while battery is the intentional harmful or offensive contact.").

In this case, plaintiff has alleged that while she was trying to exit the store after being terminated, defendant Natalie Cohen approached plaintiff from behind, grabbed plaintiff's wrist, and ripped the plastic bag that was wrapped around her wrist off of her arm, injuring her in the process. (DE # 1 at 4.) There is no allegation that plaintiff knew defendant Natalie Cohen was going to grab her arm, and there is no allegation that plaintiff was in apprehension of this alleged touching. Thus, plaintiff does not state a claim for assault. Plaintiff has, however, stated a claim for battery. *See Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) ("'[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" (quoting Restatement (Second) of Torts § 13 (1965))). Specifying an incorrect

legal theory is not fatal to plaintiff's claim. *Hall v. Nalco Co.*, 534 F.3d 644, 649 n.3 (7th Cir. 2008). Therefore, the court will dismiss plaintiff's assault claim, but plaintiff will be allowed to proceed with a battery claim.

### C. Amount In Controversy (Section D of Defendants' Brief)

Defendants argue that plaintiff's case must be dismissed because she is seeking only $70,000 in damages, which defendants contend fails to meet the "federal court minimum" of $75,000. (DE # 7 at 8-9.) Defendants are mistaken, however, because there is no amount in controversy requirement when, as in this case, jurisdiction exists under 28 U.S.C. § 1331, the federal question jurisdiction statute. (DE # 1 at 7); *see also Wells v. Willow Lake Estates, Inc.*, 390 F. App'x 956, 957 n.1 (11th Cir. 2010) ("There is no amount-in-controversy requirement in [a] federal question jurisdiction case."). Additionally, there is no amount in controversy requirement for a federal court's jurisdiction over any supplemental state-law claims. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 875 (7th Cir. 2012). Defendants' argument regarding the amount in controversy therefore fails.

### D. Statute of Limitations (Section E of Defendants' Brief)

Next, defendants argue that plaintiff's Title VII claims must be dismissed because plaintiff failed to file suit within 90 days of receiving her right-to-sue letter. (DE # 7 at 9.) While defendants are correct that a plaintiff must file any Title VII suit within 90 days of receiving a right-to-sue letter, 42 U.S.C. § 2000e–5(f)(1); *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999), defendants are mistaken about the date plaintiff filed her suit. Defendants contend that plaintiff filed her suit on December 21,

2012 (DE # 7 at 9), but plaintiff actually filed her suit on November 19, 2012. (*See* DE # 1.) The EEOC issued plaintiff's right-to-sue letter on August 22, 2012[8] (*see* DE # 1 at 7, 11), and her suit was filed within 90 days of that date. Therefore, defendants' statute of limitations argument fails.

### E. Arbitration & Preclusion (Sections F and G of Defendants' Brief)

Defendants next argue that plaintiff's claims should be dismissed, or stayed, because plaintiff's union contract called for arbitration as the method to resolve any disputes. (DE # 7 at 9-10.) Additionally, defendants contend that an arbitration was in fact held in January 2013, and some of the disputes in the current suit were part of that arbitration. (*Id.*) Thus, defendants argue that plaintiff's current claims must be dismissed due to "issue preclusion/estoppel principles." (*Id.* at 9.)

Defendants have cited no authority for their preclusion/estoppel argument, and therefore, have not developed this argument in a meaningful way. Additionally, defendants' contention that an arbitration between the parties was held in January 2013 is not evidence, *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."),

---

[8] It is not clear when plaintiff actually received her right-to-sue letter, which is the date that starts the 90-day period. *DeTata v. Rollprint Packaging Products Inc.*, 632 F.3d 962, 967-68 (7th Cir. 2011) ("[T]he 90–day period does not start running until the claimant (or her agent) actually receives the right-to-sue letter from the EEOC."). Plaintiff presumably received the right-to-sue letter a few days after it was issued on August 22, 2012. The exact date plaintiff received the right-to-sue letter is irrelevant, however, because plaintiff filed suit within 90 days of the date that the EEOC issued the right-to-sue letter.

and does not provide the court a basis for granting defendants' motion on preclusion grounds.

Defendants next argue that the court must stay this case until the arbitrator issues a ruling. (DE # 7 at 9.) Defendants have not provided the court with a copy of the arbitration agreement, and, although plaintiff has attached several pages of what is presumably the union contract that governed her employment (*See* DE # 1 at 12-14), the arbitration provision contained in that contract does not appear to apply to most of plaintiff's claims.

The arbitration agreement states:

> In the event a dispute or grievance arises between the Employer and the employee relative to wages, hours or conditions of employment under the terms of this Agreement, such dispute shall be in the first instance settled, if possible, by representatives of the Employer. . . . In the event of failure to adjust such dispute or grievance, said parties agree to submit same to arbitration.

(DE # 1 at 14 § 10.3.) Defendants have failed to put forth any argument that plaintiff's current claims are covered by this language. With regard to plaintiff's federal employment discrimination claims, the court questions whether this arbitration provision is specific enough to encompass those claims. *See Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 80 (1998) (holding that a "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" must be "clear and unmistakable."). Additionally, plaintiff's claims of criminal confinement and assault do not seem to concern a dispute "relative to wages, hours or conditions of employment[.]" (DE # 1 at 14 § 10.3.)

As for plaintiff's wrongful discharge claim, which appears to be covered by the arbitration provision, and which defendants contend, without submitting any evidence, was already the subject of an arbitration in January 2013 (DE # 7 at 9), the power of a federal district court to stay a case on account of an arbitration clause derives from § 3 of the Federal Arbitration Act. 9 U.S.C. § 3; *see also Continental Casualty Co. v. American National Insurance Co.*. 417 F.3d 727, 732 n.7 (7th Cir. 2005). "The Federal Arbitration Act applies to written arbitration provisions contained in contracts involving interstate commerce." *Jet Vac Inc. v. J&L Mgmt. Corp.*, No. 3:07-CV-062, 2007 WL 1749227, at *1 n.1 (N.D. Ind. June 14, 2007); *see also* 9 U.S.C. §§ 1, 2. Defendants, however, have failed to present any argument or evidence that the contract in this case involves interstate commerce in any way. Additionally, the language of the contract itself does not satisfy the court that this requirement has been met. Therefore, the court declines to stay this action as it relates to plaintiff's wrongful discharge claim at this stage of the litigation.

Finally, defendants argue that allowing plaintiff to proceed with this suit would be tantamount to allowing plaintiff to "'double dip' claims and remedies" because the parties have already participated in arbitration. (DE # 7 at 9-10.) Although defendants cite no authority for this argument, it appears to be a rehashing of the preclusion argument addressed above. And, as noted above, this argument fails because defendants have not provided the court with any evidence that the parties actually arbitrated any of plaintiff's claims.

**F. Plaintiff's Wrongful Discharge Claim (Section H of Defendants' Brief)**

Defendants also argue that plaintiff's wrongful discharge claim must be dismissed. (DE # 7 at 10.) Specifically, defendants argue that this claim must be dismissed because Indiana is "strongly attached to the 'at-will' doctrine."[9] (*Id.*) Under Indiana law, there are two basic types of employment: "(1) employment for a definite or ascertainable term; and (2) employment at-will." *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). "[I]n Indiana, the presumption of at-will employment is strong . . . ." *Id.* at 717-18 (citing *Wior v. Anchor Industries, Inc*, 669 N.E.2d 172, 177 & n.5, 178 (Ind. 1996)). Indiana's employment at will doctrine generally allows "both the employer and the employee to terminate the employment at any time for a good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) (citation and quotation omitted). "If the parties choose to include a clear job security provision in an employment contract," however, "the presumption that the employment is at-will may be rebutted." *Orr*, 689 N.E.2d at 717; *see also Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192 (Ind. 1989).

As noted above, plaintiff has submitted what appears to be several pages from a union contract. (DE # 1 at 12-14.) Included in that document is a provision which states that "[n]o employee shall be discharged without good and sufficient cause." (*Id.* at 14

---

[9] Defendants also argue that plaintiff's wrongful discharge claim must be dismissed because it is mentioned in the Statement of Legal Claim section of plaintiff's complaint but not under the Basis of Legal claim section of plaintiff's complaint. (DE # 7 at 10.) Defendants made this argument earlier in their brief (*id.* at 5), and the court rejected that argument in a prior section of this opinion. *See supra* at p. 8.

§ 11.) In their motion to dismiss, defendants do not address this provision or the impact it may have on whether plaintiff was an at-will employee. Because this provision may have rebutted the presumption of at-will employment, and because defendants have not addressed the issue, defendants' argument that plaintiff's wrongful discharge claim must be dismissed because plaintiff was an at-will employee fails.

Additionally, defendants argue that plaintiff has failed to allege any facts in support of her wrongful discharge claim. (*See* DE # 7 at 11.) Plaintiff has, however, alleged that defendants failed to comply with several provisions of the union contract, including the provision that states that employees cannot be discharged without "good and sufficient cause." (DE # 1 at 10.) Defendants do not address this allegation, and therefore the court will not dismiss plaintiff's wrongful discharge claim at this stage of the litigation.

### G. Respondeat Superior (Section I of Defendants' Brief)

Defendants next argue that plaintiff's claims against Ron Cohen, David Cohen, Natalie Cohen, and Blanca Menchaca fail on account of the doctrine of respondeat superior. (DE # 7 at 11.) This section of defendants' brief appears to be missing a portion of defendants' argument on the issue, and dismissal of plaintiff's claims against the individual defendants is therefore inappropriate.[10]

---

[10] This section of defendants' brief states:

Plaintiff alleges individual claims against Ron Cohen, President, Natalie Cohen, Secretary, and David Cohen, Vice President. The Corporation (NAME) [sic] is a legal entity separate and apart from any of its officers. Naming individual

**H. Formatting (Section K of Defendants' Brief)**

Plaintiff, who is proceeding pro se, filed a complaint that is made up of the standard EEOC complaint form available on the court's website[11] along with several supplemental pages containing factual allegations that support plaintiff's claims. (*See* DE # 1.) Each of the supplemental pages has a holiday image at the top. Defendants make several arguments regarding the format of plaintiff's complaint. (DE # 7 at 11-12.) The court will address each argument in turn.

First, defendants argue that the supplemental pages of plaintiff's complaint constitute an ex parte communication because the first supplemental page begins with a line that states "To: United States District Court, Re: Complaint against Brady's This Is It[.]" (DE # 7 at 11.) An ex parte communication is "[a] generally prohibited communication between counsel and the court when opposing counsel is not present." BLACK'S LAW DICTIONARY 597 (7th ed. 1999). Plaintiff's complaint was not sent to the undersigned district court judge directly. It was filed using the CM/ECF system and

---

officers, shareholders and directors is akin to a claim of vicarious liability. The doctrine of respondeat superior creates a situation where the employer, not the employee is liable for tortious acts of the employee. *Absolutely no mention is made oe.* [sic (emphasis added)] All charges should be dismissed against Ron Cohen, Natalie Cohen, David Cohen and Blanca Menchaca.

(DE # 7 at 11.)

[11] The form is available at http://www.innd.uscourts.gov/docs/EEOC%20Complaint%20Form.pdf.

docketed. The court fails to see how this constitutes an ex parte communication, and defendants' argument on this issue fails.

Defendants next request that the supplemental pages be stricken because those pages are neither a pleading or a motion. (DE # 7 at 11-12.) As noted above, because plaintiff is proceeding pro se, the court must construe plaintiff's complaint liberally. *Gilbert*, 557 F.3d at 546. But, in any event, these supplemental pages are simply part of the complaint. *Reger Devel., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("We consider documents attached to the complaint as part of the complaint itself."). Therefore, defendants' argument on this point fails.

Defendants also argue that the supplemental pages must be stricken under RULE 11(a), which requires that every pleading, motion, and paper be signed by an attorney or by a party personally if the party is unrepresented. FED. R. CIV. P. 11(a). Plaintiff has, however, signed the final page of the standard EEOC complaint form. (DE # 1 at 9.) Although plaintiff did not sign the supplemental pages, they are clearly meant to supplement the complaint, and the court concludes that plaintiff's signature on the EEOC form is sufficient to comply with RULE 11(a).

Finally, defendants argue that plaintiff has failed to include her address, telephone number, and email address on the supplemental pages, as required by RULE 11(a). Plaintiff included her address and telephone number on the first page of her complaint, (DE # 1 at 1) and although the court cannot locate plaintiff's email address anywhere in her complaint, defendants have not provided the court with any legal

authority for the proposition that a party's failure to include an email address in a filing subjects that filing to dismissal.[12] Therefore, defendants' argument on this issue fails. Plaintiff is reminded, however, that she must comply with the Federal Rules of Civil Procedure, including RULE 11, in any future filings. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

### I. Additional Arguments from Defendants' Conclusion

In the conclusion section of their brief, defendants summarize the arguments from the body of the brief, but also appear to make additional arguments requesting the court strike several portions of the complaint. (DE # 7 at 13.) Most of these arguments simply rehash arguments that the court addressed in various sections above, and the court will not address those arguments again. However, defendants also move to strike the factual allegations in Section IV on page 9 of plaintiff's complaint, which support plaintiff's Title VII claims, because the facts alleged are irrelevant, vague, and not within plaintiff's personal knowledge.[13] (*Id.*) Defendants do not support this request with any argument. The court, however, finds these allegations to be relevant to plaintiff's Title VII claims. Additionally, the court concludes that these allegations are not vague. With regard to defendants' contention that these factual allegations are not

---

[12] It is also possible that plaintiff does not have an email account.

[13] The specific allegations are that "[o]wners always treated the black employees differently" and "[black employees] weren't considered for [management] positions even though they had qualifications [and] many years of experience working for the company." (DE # 1 at 9.)

26

within plaintiff's personal knowledge, plaintiff signed an affirmation as part of her complaint, which stated: "I have read all of the statements contained in the complaint and those which are attached in the accompanying financial statement. I believe them to be, to the best of my personal knowledge, true and correct." (DE # 1 at 9.) Because defendants have not put forth any argument as to why these statements are not within plaintiff's personal knowledge, defendants' argument is not persuasive and the court will not strike the requested portions of plaintiff's complaint.

IV.     **Conclusion**

For the foregoing reasons, defendants' motion to dismiss (DE # 6) is **GRANTED** as it relates to plaintiff's assault claim, and **DENIED** as it relates to all of plaintiff's other claims.

**SO ORDERED.**

Date: July 1, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT